**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-61190-BLOOM/Hunt**

JAMELL LUNNON,
*on behalf of himself as representative of other class members similarly situated*,

Plaintiff(s),

v.

COLONIAL VAN LINES OF GA INC.,
A Foreign Profit Corporation and
ALDO DISORBO, individually,

Defendants.
_______________________/

**ORDER ON MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon Defendant Colonial Van Lines of GA Inc.'s ("Defendant" or "CVL") Motion to Dismiss Class Action Complaint, to Strike Class and Collective Allegations, ECF No. [23] ("Motion"). Plaintiff Jamell Lunnon ("Plaintiff") filed a Response, ECF No. [30]. The Court has considered the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff is a Truck Driver, who previously worked for Defendant. He brings this class action on behalf of himself and other class members similarly situated. ECF No. [1]. As alleged in the Complaint, this case involves Defendants CVL and Aldo Disorbo's ("Disorbo") (together, "Defendants") "deliberate scheme to misclassify their truck drivers as independent contractors, thereby denying them the fundamental protections du[e] to employees under Florida Law." *Id.* ¶

1. Defendants run a large trucking operation in Georgia and have "engag[ed] in a pattern and practice of willfully misclassifying their truck drivers, including Plaintiff . . . and similarly situated truck drivers . . . as independent contractors instead of affording them their true status as employees, thus denying these workers the basic wage-and-hour rights and protections guaranteed to employees by the FLSA and FMWA." *Id.* ¶ 2. As a result, Plaintiff and other similarly situated truck drivers were and are routinely denied payment of all earned wages. *Id.* ¶ 3.

Defendant CVL is a major trucking company that provides moving services including, but not limited to, transporting customer property and providing storage and packaging services. *Id.* ¶ 27. Defendant Disorbo is the owner of Defendant CVL. To run the business, Defendants hire truck drivers who own or lease trucks to package, load, and move property for Defendants on a regular basis. *Id.* ¶ 28. The property transported by the drivers belongs to Defendants' customers. *Id.* ¶ 29. Plaintiff was employed as a Truck Driver for Defendants from October 2023 through September 2024. *Id.* ¶ 6.

As a condition to working for Defendants, Plaintiff and other drivers are required to sign an Independent Contractor Operating Agreement (the "Agreement") prepared by Defendants, under which the drivers, including Plaintiff, are made to acknowledge their status as independent contractors. *Id.* ¶ 30. Under the Agreement, drivers assume the responsibility to pay operational expenses such as administrative fees, license plates, oil, fuel, tax, tires, equipment, repairs and maintenance, and civil fines and penalties. *Id.* ¶ 31. The Agreement also mandates that drivers are responsible for paying for workers' compensation/occupational accident insurance. *Id.* ¶ 32.

Notwithstanding the purported independence of drivers under the Agreement, Defendants require drivers to apply to the outside of their truck whatever identification Defendants designate and, at the drivers' expense, remove any paint, decals, or other items that would interfere with such

identification. *Id.* ¶¶ 33, 34. Drivers use Defendants' trucks to work exclusively for Defendants on a long-term basis. *Id.* ¶ 35. Drivers are not engaged in a separate business or profession but instead work exclusively and regularly for Defendants at least 5 days a week. *Id*. Plaintiff and the other drivers depend on Defendants for their livelihood. *Id*. Defendants require drivers to adhere to Defendants' Operational Procedures Handbook in relation to shipments assigned to them. *Id.* ¶ 36. Defendants also impose on drivers and strictly oversee recordkeeping requirements under the Agreement, which require drivers to complete driving logs, fuel purchase logs, toll receipt logs, food and hotel receipt logs, bills of lading, orders, inventory logs, accident reports, vehicle inspection reports, and any other reports or data designated by Defendants. *Id.* ¶ 37. Defendants control the assignment and dissemination of shipments to each driver. *Id.* ¶ 38. Drivers may refuse shipments only if, under the Defendants' reasonable judgment, Defendants can meet the customer's needs without the given driver. *Id*.

Furthermore, drivers, at their own expense, are required to comply with Defendants' policies and procedures by purchasing and wearing Defendants' uniforms while engaged in work for Defendants. *Id.* ¶ 39. Defendants unilaterally set drivers' pay rates for each load and shipment, which are not negotiable. *Id.* ¶ 40. The days and shipments worked by drivers are controlled by Defendants. *Id.* ¶ 41. To receive a shipment assignment, drivers must check in with Defendant at the start of the drivers' work shift. *Id*. The driver is then provided a shipping assignment. *Id.* Defendants also monitor drivers' location, movement, and status of drivers' travel for Defendants. *Id.*

Drivers who work for Defendants are integrated into Defendants' regular business operations and are essential to Defendants' day-to-day operations. *Id.* ¶ 42. Defendants strictly require drivers to do daily truck inspections, to perform other maintenance inspections, and subject

drivers to drug and alcohol testing—all subject to discipline, suspension, or termination for failure to do so. *Id.* ¶ 43. Defendants maintain the right to terminate drivers at any time for any reason under the Agreement. *Id.* ¶ 44.

Notwithstanding this, Defendants classify drivers as independent contractors. *Id.* ¶ 45. As a result, Defendants do not provide workers compensation/occupational accident insurance to drivers and pass on their operational costs in the form of administrative fees and fees for uniforms. *Id.* ¶ 46. Defendants do not reimburse drivers for all business expenses, including, but not limited to, the cost to procure and maintain tools, equipment, trucks, uniforms, supplies, and insurance necessary to complete their duties. *Id.* ¶ 49. Drivers work under a payment system that is pay per job and pay per load-weight; drivers are paid a fixed rate for each shipment performed, regardless of the amount of time the driver spends working that shipment. *Id.* ¶ 50.

Drivers are not compensated or reimbursed for tools purchased to fulfill their required duties. *Id.* ¶ 52. Drivers are required to personally purchase, without compensation or reimbursement from Defendants, tools, equipment, plates, insurance, uniforms, and other supplies necessary to work for Defendants and complete Defendants' moving assignments. *Id.* Defendants further deduct from drivers' paychecks for maintenance, repairs, expenses, fines, penalties, claims, tolls, taxes, and fees. *Id.* ¶ 53.

Plaintiff asserts six claims: Wage and Hour Federal Statutory Violation against Defendant (Count I), Wage and Hour Federal Statutory Violation against Disorbo (Count II), Violation of Florida Minimum Wage Act against Defendant (Count III), Violation of Fee and Clear Payment under 29 C.F.R. § 531.55 against Defendant (Count IV), Quantum Meruit against Defendant (Count VI),[1] and Unjust Enrichment against Defendant (Count VII).

---

[1] Plaintiff appears to have inadvertently skipped Count V. The Court adopts Plaintiff's numbering of the Counts.

In June 2026, Defendant filed the instant Motion, arguing the Complaint should be dismissed and certain allegations stricken under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(f), and 23(d)(1)(D). ECF No. [23]. Plaintiff responds that he agrees with some of Defendant's arguments and therefore seeks leave to amend the Complaint. ECF No. [30]. The Motion is now ripe for review.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(1) challenges the district court's subject-matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence*, 919 F.2d at 1529). "'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.* (quotation marks omitted); *see also Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("[A] factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.") (citation omitted)).

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests

upon the party asserting jurisdiction." *Id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799) and *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–183 (1936)). Once a federal court determines that it is without subject matter jurisdiction, "the court is powerless to continue." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974–75 (S.D. Fla. 2023); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

"A district court can hear a case only if it has at least one of three types of subject matter jurisdiction: (1) jurisdiction under specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Hensley v. Hartford Cas. Ins. Co.*, 113 F.4th 1327, 1332 (11th Cir. 2024) (quoting *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017) (internal quotations omitted)). With regard to federal question jurisdiction, the district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C § 1331; *see Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002) ("federal jurisdiction generally exists 'only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'") (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

**B. Federal Rule of Civil Procedure 12(b)(6)**

When ruling on a Rule 12(b)(6) motion to dismiss, a court generally focuses on the complaint itself. *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006) ("A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss."). Federal Rule of Civil Procedure 8(a)(2) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not impose a requirement of "detailed factual allegations," but it does demand "more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To survive an attack by a Rule 12(b)(6) motion to dismiss, a complaint must therefore contain factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertion[s]' devoid of 'further factual enhancement' " will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). But a complaint may proceed if it contains "enough factual matter (taken as true) to suggest" the elements of the stated claims. *Twombly*, 550 U.S. at 556.

In evaluating the complaint, a court accepts as true the plaintiff's factual allegations and any reasonable inferences drawn from those facts. *Martins v. Royal Caribbean Cruises Ltd.*, 174 F. Supp. 3d 1345, 1349 (S.D. Fla. 2016) (citing *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). A court need not accept the plaintiff's legal conclusions as true. *Iqbal*, 556 U.S. at 679. And while a court makes reasonable inferences in the plaintiff's favor, it need not make the same inferences as the plaintiff nor accept "unwarranted deductions of fact." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting *S. Fla. Water Dist. Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996)).

Although a court primarily considers only facts contained within the four corners of the complaint when ruling on a motion to dismiss, the court may consider additional documents when "a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

**C. Federal Rule of Civil Procedure 12(f)**

Pursuant to Federal Rule of Civil Procedure 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Under Rule 12(f), a motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Laferte v. Murphy Painters, Inc.*, No. 17-CIV-60376, 2017 WL 2537259, at *1 (S.D. Fla. June 12, 2017) (collecting cases). Thus, despite the Court's broad discretion, a motion to strike is considered a drastic remedy and is often disfavored. *Id.*

**D. Federal Rule of Civil Procedure 23(d)(1)(D)**

Federal Rule of Civil Procedure 23 governs class action matters, and so "[f]or a district court to certify a class action, the named plaintiff must have standing, and the putative class must meet each of the requirements specified in [Rule] 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (internal quotations omitted).

Under Federal Rule of Civil Procedure 23(d)(1)(D), courts "may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1). But Rule 23(d)(1)(D) only applies to a court "conducting an action under this rule[.]" Fed. R. Civ. P. 23(d)(1). Thus, many courts find that Rule 23(d)(1)(D) is not applicable where the Court has not yet certified the matter as a class action. *See, e.g.*, *Bianchi v. Dynamic Recovery Sols., LLC*, No. 13-61997-CIV, 2015 WL 12711584, at *1 (S.D. Fla. Apr. 28, 2015). Instead, such courts "view the Rule 23 factors through the lens of the Rule 12(f) standard for motions to strike" and ask "whether [the plaintiff's] class action allegations are 'redundant, immaterial, impertinent, or scandalous.'" *Gill-Samuel v. Nova Biomedical Corp.*, 298 F.R.D. 693, 700 (S.D. Fla. 2014) (quoting Fed. R. Civ. P. 12(f)); *see*

*also Thompson v. Procter & Gamble Co.*, No. 18-CV-60107, 2018 WL 5113052, at *5 (S.D. Fla. Oct. 19, 2018). As with all motions to strike, motions to strike class allegations are disfavored, especially prior to class certification. *See Lankford v. Carnival Corp.*, No. 12-24408-CIV, 2013 WL 12064497, at *6 (S.D. Fla. June 18, 2013) (collecting cases).

## III. DISCUSSION

### A. Applicability of the Motor-Carrier Exemption

Defendant first argues that Plaintiff's FLSA overtime theory should be dismissed because the Complaint pleads truck-driver work which is subject to the motor-carrier exemption at 29 U.S.C. § 213(b)(1). ECF No. [23] at 9–11. Plaintiff does not respond specifically to this contention. ECF No. [30].

Pursuant to 29 U.S.C. § 207, a provision of the Fair Labor Standards Act ("FLSA"), employers may not require employees to work more than a forty-hour workweek without providing overtime compensation. 29 U.S.C. § 207. However, the FLSA contains exemptions to the overtime provision. One such exemption is found in the 29 U.S.C. § 213, which provides that § 207 shall not apply with respect to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service[.]" 29 U.S.C. § 213(b)(1). In turn, 49 U.S.C. § 31502 provides that the Secretary of Transportation may "prescribe requirements for . . . qualifications and maximum hours of service of employees of . . . a motor carrier[.]" 49 U.S.C. § 31502(b)(1).

In the Eleventh Circuit, whether the motor-carrier exemption applies "is dependent on whether the Secretary has the power to regulate, not on whether the Secretary has actually exercised such power." *Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 181 n. 2 (11th Cir. 1991). Put differently, for the motor-carrier exemption to apply, the Secretary of Transportation's "power to regulate under the act merely needs to cover a particular group of

employees." *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1226 (11th Cir. 2009). In interpreting the motor-carrier exemption, the Eleventh Circuit has said that the Secretary of Transportation has the authority "'to regulate the maximum hours of service of employees who are employed (1) by a common carrier by motor vehicle; (2) engaged in interstate commerce; and (3) whose activities directly affect the safety of operations of such motor vehicles.'" *Id.* at 1226–27 (quoting *Spires v. Ben Hill Cnty.*, 980 F.2d 683, 686 (11th Cir. 1993)). "The applicability of the motor carrier exemption 'depends both on the class to which his employer belongs and on the class of work involved in the employee's job.'" *Id.* at 1227 (quoting 29 C.F.R. § 782.2).

Here, the applicability of this exemption is evident from the allegations in Plaintiff's Complaint. As alleged by Plaintiff, Defendant "is a major trucking company that provides moving services . . . for intrastate[] and interstate moves." ECF No. [1] ¶ 27. Indeed, the Agreement, appended to the Complaint, states that Plaintiff and the other drivers each constitute "an independent motor carrier." *Id.* at 30. Furthermore, the Agreement places on drivers an obligation to engage in "Safe and Lawful Operations" and contemplates the drivers furnishing the equipment "necessary or required for the safe and efficient operation and maintenance of the Equipment[.]" *Id.* at 32, 34. Plaintiff further pleads that the drivers are required "to do daily truck inspections" and "perform other maintenance inspections." *Id.* ¶ 43. Those allegations show a common carrier employer engaged in interstate commerce with employees—i.e., drivers—whose activities directly affect the safety of the motor vehicles involved.

Thus, the Court agrees that Plaintiff's pursuit of "overtime wages," as alleged in Count I and Count II, is necessarily futile. However, it does not follow that the Counts should be dismissed in whole. That one form of relief sought under a count is unavailable does not mean that the whole count should be dismissed. *See, e.g.*, *A.W. ex rel. J.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309,

1315 (11th Cir. 2024) ("requesting an improper remedy is not fatal to a claim," and "(t)hat a plaintiff might misconceive his remedy does not warrant dismissal of the complaint unless he is entitled to no relief under any state of facts."). Thus, the Court points out that Plaintiff's Complaint gives rise to the unavailability of overtime payments under the FLSA.

### B. Failure to Plead FLSA Enterprise Coverage or Class Action Fairness Act ("CAFA") Jurisdiction

Defendant next argues that Plaintiff fails to plausibly plead that the FLSA covers Defendant, as Plaintiff offers no conclusory allegations of Defendant's gross revenues. ECF No. [23] at 11–12. Similarly, Plaintiff fails to plausibly allege that the amount in controversy exceeds $5 million or that the class exceeds 100 members, as required for CAFA jurisdiction. *Id.* at 12–13. Plaintiff does not respond to this argument. ECF No. [30].

To be eligible for FLSA overtime, an employee must demonstrate that he is "covered" by the FLSA. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011). The FLSA has two types of coverage. *See Ares v. Manuel Diaz Farms, Inc.*, 318 F.3d 1054, 1056 (11th Cir. 2003) (citation omitted). The first type, called "individual coverage," applies where an employee regularly and "directly participat[es] in the actual movement of persons or things in interstate commerce." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citations omitted). The second type, "enterprise coverage," applies where the employee is "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). As relevant here, the term "enterprise," as used in "enterprise coverage," requires that the business have an "annual gross volume of sales made or business done [] not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(ii).

Contrary to Defendant's argument, at the motion to dismiss stage, "merely alleging, upon information or belief, that the defendant employer's gross income exceeded $500,000 annually is

generally sufficient." *Lopez v. S. Fla. Shavings, Inc.*, No. 14-80614-CIV, 2015 WL 12866280, at *2 (S.D. Fla. Nov. 2, 2015) (citing *West v. Aventura Limousine & Transp. Serv., Inc.*, No. 12-21685-CIV, 2012 WL 3516507, at *2 (S.D. Fla. Aug. 14, 2012)); *see also Dobbins v. Scriptfleet, Inc.*, No. 8:11–cv–1923–T–24–AEP, 2012 WL 601145, at *2 (M.D. Fla. Feb. 23, 2012) (allegation, on information and belief, that defendants' annual gross sales exceeded $500,000 was sufficient to withstand dismissal); *Roberts v. Caballero & Castellanos, PL*, No. 09–23131–CIV, 2010 WL 114001, at *3 (S.D. Fla. Jan. 11, 2010) (allegation that plaintiff "was of the belief that [defendant] grossed in excess of $500,000 annually" was sufficient to withstand dismissal); *Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc.*, No. 8:07–cv–2359–T–23TGW, 2008 WL 793660, at *2 (M.D. Fla. Mar. 24, 2008) ("bare bones allegations" of gross sales are adequate; requiring more would only encourage "gross speculation" from the plaintiff and would "not provide the defendant with meaningful information because the defendant already has [ ] such information") (citation omitted). Because Plaintiff provides precisely this allegation, ECF No. [1] ¶ 74, the Court declines to dismiss the FLSA claims on this basis.

Turning to Defendant's CAFA arguments, CAFA provides that federal district courts have original jurisdiction over class actions where the amount in controversy exceeds $5 million and any member of a class of plaintiffs is diverse from any defendant. 28 U.S.C. § 1332(d)(2). Furthermore, for CAFA jurisdiction to exist, the number of class members must be at least 100 people. 28 U.S.C. § 1332(d)(5)(B). Importantly though, CAFA did not amend the traditional rule that the party seeking the court's intervention bears the burden of persuasion regarding jurisdiction. *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328 (11th Cir. 2006).

At the motion to dismiss stage, if the complaint alleges that the amount in controversy exceeds the jurisdictional amount, that amount asserted is assumed to be made in good faith and

controls. *See Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1123 (11th Cir. 2010) ("We assume that the sum claimed here by Cappuccitti was made in good faith, and it therefore controls." (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938))); *see also Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) ("A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith."). It is only where it appears "to a legal certainty that the claim is really for less than the jurisdictional amount" that a court should find jurisdiction lacking. *St. Paul*, 303 U.S. at 289. Still, the court "need not suspend reality or shelve common sense in determining whether the complaint . . . establishes the jurisdictional amount." *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1045 (11th Cir. 2020).

Here, Defendant "has opted not to provide any evidence in support of its motion to challenge factually the amount in controversy." *Gregory Haskin Chiropractic Clinics, Inc. v. Progressive Select Ins. Co.*, No. 18-63170-CIV, 2019 WL 13169622, at *2 (S.D. Fla. Dec. 27, 2019). As such, its attack is a facial one, rather than factual. And based on the allegations before it, the Court cannot say that it is clear to a legal certainty that the claim is for less than $5 million. The Complaint does not specify just how far above $500,000 Defendant's annual gross revenue was during each relevant year, nor does it specify what exactly a class "well in excess of one hundred" amounts to. ECF No. [1] ¶ 13. However, Plaintiff alleges that drivers worked "exclusively for Defendants on a long-term basis." *Id.* ¶ 25. Indeed, Plaintiff described drivers as working exclusively for Defendants five days per week and relying on Defendants for their livelihood. *Id.* This at least provides a rough sense of the minimum amount at issue per year per driver, and such an amount would easily satisfy the $5 million jurisdictional threshold over the

three years at issue. Thus, at this juncture, the Court is satisfied that Plaintiff has plausibly alleged the $5 million threshold required for CAFA jurisdiction.

Finally, the Court turns to Plaintiff's allegations regarding the number of class members. Plaintiff alleges that there are "well in excess of one hundred" class members. ECF No. [1] ¶ 13. The logic described above dictates the finding here. That is, Defendant's facial attack cannot prevail, as it is not clear to a legal certainty that the class does not exceed 100 persons. Indeed, common sense provides that a trucking company could easily have over 100 drivers performing its work. Plaintiff's good faith estimate is sufficient at this stage of the litigation. *See, e.g.*, *Kelly v. State Farm Mut. Auto. Ins. Co.*, No. 5:10-CV-194-OC-32TBS, 2012 WL 768172, at *2 (M.D. Fla. Mar. 9, 2012) (finding sufficient the plaintiff's allegation of "more than 100" potential class members).

**C. Minimum-Wage and Kickback Allegations**

Defendant next argues that Plaintiff's minimum wage and kickback allegations are conclusory and do not state an independent claim under 29 C.F.R. § 531.35. ECF No. [23] at 13. Specifically, Plaintiff does not plead any facts showing that Defendant failed to pay the minimum wage to Plaintiff or to the intended class. *Id.* at 14. Moreover, § 531.35 is not an independent statutory cause of action separate from the FLSA, so Count IV should be dismissed. *Id*. Plaintiff does not respond specifically to these contentions. ECF No. [30].

In the Eleventh Circuit, "[t]o state a claim for failure to pay minimum (or overtime) wages under the FLSA, a plaintiff must demonstrate that (1) [s]he is employed by the defendant, (2) the defendant engaged in interstate commerce, and (3) the defendant failed to pay [her] minimum or overtime wages." *Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.*, 494 F. App'x 940, 942 (11th Cir. 2012) (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F. 3d 1233, 1277 n.68 (11th Cir. 2008)). Importantly, the FLSA defines employee as "any individual employed by an

employer." 29 U.S.C. § 203(e)(1). "Employees are entitled to be paid a minimum wage and overtime wages; independent contractors are not." *Hurst v. Youngelson*, 354 F. Supp. 3d 1362, 1368 (N.D. Ga. 2019) (citation omitted). "To determine whether an individual falls into the category of covered 'employee' or exempted 'independent contractor,' courts look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013) (citing *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)).

Importantly, courts confronting similar cases—that is, where the crux of the issue is whether the defendant improperly classified employees as independent contractors—broadly hold that a plaintiff need not "plead the precise number of hours worked and applicable pay rates to state an FLSA claim." *Anish v. Nat'l Sec. Corp.*, No. 10-80330-CIV-MARRA, 2010 WL 4065433, at *2 (S.D. Fla. Oct. 15, 2010); *see also Beckman v. Regina Caeli, Inc.*, 752 F. Supp. 3d 1346, 1381 (N.D. Ga. 2024) (finding sufficient the plaintiff's allegations that "he performed work for RCA, and that RCA failed to pay him wages for the hours he worked"); *Blake v. Batmasian*, 191 F. Supp. 3d 1370, 1373 (S.D. Fla. 2016) (rejecting that a plaintiff must "specify any time period or approximate number of hours worked" to state an FLSA claim); *Villarino v. Pacesetter Pers. Serv., Inc.*, 481 F. Supp. 3d 1252, 1256 (S.D. Fla. 2020); *Ceant v. Aventura Limousine & Transp. Servs.*, Inc., 874 F. Supp. 2d 1373, 1380 (S.D. Fla. 2012) ("[T]he Court rejects Defendant's argument that Plaintiff must plead the precise number of hours worked and applicable pay rates to state an FLSA claim." (quotation omitted)).

Indeed, the Eleventh Circuit has expressly held that where a plaintiff alleges that the defendant "repeatedly violated stated provisions of the FLSA by failing to pay covered employees minimum hourly wages and to compensate employees who worked in excess of forty hours a week

at the appropriate rates," such allegations are sufficient to state a claim—the "FLSA does not require more." *Sec'y of Lab. v. Labbe*, 319 F. App'x 761, 763–64 (11th Cir. 2008). There, the complaint contained no allegations of the amount of time worked, the applicable pay rates, or anything of the sort. *See Sec'y of Lab. v. South Florida Contractors, Inc.*, Case No. 9:07-cv-80192 (S.D. Fla. Mar. 2, 2007).[2]

Here, Plaintiff alleges that the compensation scheme to which he and other drivers were and are subjected "compensated them less than the minimum wage for all hours worked." ECF No. [1] ¶ 10. The time period at issue is also well-defined, spanning October 2023 to the entry of judgment in this case (or, in Plaintiff's case, September 2024). *Id.* ¶¶ 6, 9. That is precisely the level of specificity required of an FLSA pleading in this circuit. Accordingly, the Court finds that Plaintiff's minimum wage allegations are not conclusory and declines to dismiss any Counts on that basis.

The Court now turns to Defendant's argument that Count IV should be dismissed because the "free and clear principle" found at 29 C.F.R. § 531.35 does not support a separate cause of action. ECF No. [23] at 14.[3] The Court does not agree. Plaintiffs can and routinely do bring claims

[2] The Court is aware of *Rance v. Rocksolid Granit USA, Inc.*, which states that a plaintiff "must show 'as a matter of just and reasonable inference' the amount and extent of his work in order to demonstrate that he was inadequately compensated under FLSA." 292 F. App'x 1, 2 (11th Cir. 2008) (citations omitted). However, *Rance* involved a distinguishable set of facts. There, the plaintiff alleged that he did not receive wages due for a portion of one day's work. *Id*. However, neither the complaint nor the documents attached supported that inference; indeed, in an email attached to the complaint, the employer stated that he would get a check to the plaintiff as soon as plaintiff informed him of the number of hours worked on that particular day. *Id*. Because the complaint failed to allege that the plaintiff responded to the email, the Eleventh Circuit affirmed dismissal of the claim, finding that the complaint and attached documents showed that any lack of payment resulted from the plaintiff's own actions, not the employer's actions. *Id*. "The case does not stand for the proposition that specificity or evidence is required at the pleading stage." *Cummings v. Knowles on Site Repair, Inc.*, No. 3:20CV5412-MCR-MJF, 2020 WL 13227431, at *4 (N.D. Fla. Sept. 11, 2020).

[3] Pursuant to 29 C.F.R. § 531.35, "'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.' " 29 C.F.R. § 531.35. To that end, "[t]he wage requirements of the Act will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of

arising under the kickback prohibition found in 29 C.F.R. § 531.35. *See, e g.*, *Aguiar v. BT's on the River, LLC*, No. 22-CV-23111-KMW, 2023 WL 4014816, at *4 (S.D. Fla. May 25, 2023); *Aquino v. BT's on the River, LLC*, No. 20-20090-CIV, 2020 WL 7356372, at *3 (S.D. Fla. Dec. 15, 2020); *Kaciak v. TAB Rest. Grp., LLC*, No. 6:23-CV-1200-CEM-LHP, 2024 WL 262570, at *4 (M.D. Fla. Jan. 24, 2024); *Armand v. LifeStance Health Grp., Inc.*, No. 6:23-CV-103-PGB-EJK, 2023 WL 7411427, at *3 (M.D. Fla. Oct. 27, 2023). As such, this argument is without merit, and the Court declines to dismiss Count IV on this basis.

**D. Florida Minimum Wage Act Claim**

Defendant next argues that Plaintiff's Florida Minimum Wage Act ("FMWA") claim should be dismissed for failure to plead statutory pre-suit notice and because the FMWA does not create an overtime claim. ECF No. [23] at 14. Plaintiff again does not specifically respond to this contention. ECF No. [30].

The FMWA, which allows plaintiffs to recover unpaid minimum wages, requires that

> the person aggrieved shall notify the employer . . . in writing, of an intent to initiate such an action. The notice must identify the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of the alleged unpaid wages through the date of the notice.

Fla. Stat. § 448.110(6)(a). After receiving notice, the employer has 15 calendar days to resolve the matter before the employee may file a legal action. Fla. Stat. § 448.110(6)(b). "The statutory language is clear that a pre-suit notice is required prior to allowing an aggrieved person to bring a claim for unpaid minimum wages." *Johnson v. Nobu Associates S. Beach, LP*, No. 10-21691-CIV, 2011 WL 780028 (S.D. Fla. Feb. 4, 2011), *report and recommendation adopted*, No. 10-21691-CV, 2011 WL 772874 (S.D. Fla. Feb. 28, 2011). Courts in this district routinely dismiss claims for

---

the wage delivered to the employee." *Id.*

failure to comply with the FMWA's notice requirement. *See, e.g.*, *Jimenez v. Reeder Med. Testing, LLC*, No. 11-61817-CIV, 2012 WL 13134316, at *6 (S.D. Fla. Sept. 10, 2012), *report and recommendation adopted*, No. 11-61817-CIV, 2012 WL 13134317 (S.D. Fla. Oct. 3, 2012); *Hayes v. Coco Dulce, Inc.*, No. 19-80368-CIV, 2019 WL 7371838, at *4 (S.D. Fla. Aug. 9, 2019); *Aquino*, 2020 WL 7356372, at *5; *Villafana v. Feeding S. Fla., Inc.*, No. 13-60760-CIV, 2013 WL 2646729, at *5 (S.D. Fla. June 12, 2013); *Dominguez v. Design by Nature Corp.*, No. 08-20858-CIV-O'SULLI, 2008 WL 4426721, at *3 (S.D. Fla. Sept. 25, 2008).

Plaintiff has failed to allege that he complied with the pre-suit notice requirements contained in the FMWA. Indeed, even in Plaintiff's Response, Plaintiff fails to indicate that he could allege giving pre-suit notice. *See* ECF No. [30]. Plaintiff merely alleges that Defendant had actual knowledge of Plaintiff's complaints given the prior state court lawsuit. *Id.* ¶ 5. That argument is unavailing and notice under Florida Statute § 448.110 and actual knowledge are distinct concepts. The pre-suit notice provision at § 448.110 requires that an aggrieved individual (1) inform the employer of their intent to initiate an action, (2) "identify the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice," (3) provide the employer 15 days to pay or otherwise resolve the claim, and (4) restrict any minimum wages sought in a subsequent lawsuit to the contents of the notice. Fla. Stat. § 448.110(6). A previous lawsuit fails to fulfill those criteria—it did not inform the employer of the intent to file the *instant* lawsuit, did not provide an employer time to resolve the claim, and did not provide a limiting benchmark for minimum wage amounts sought in the instant lawsuit. As such, the Court dismisses Count III, as it asserts an FMWA claim without alleging that the pre-suit notice requirements were satisfied.

**E. Quasi-Contract Counts**

Defendant argues that Counts VI and VII—asserting quantum meruit and unjust enrichment—are duplicative, inconsistent with the Agreement, and barred to the extent they seek statutory wage relief. ECF No. [23] at 15. Plaintiff does not respond specifically to these arguments. ECF No. [30].

Section 216 of the FLSA provides the exclusive remedy for enforcing rights created under the FLSA. *See Tombrello v. USX Corp.*, 763 F.Supp. 541, 545 (N.D.Ala.1991). "As a matter of law, [a] plaintiff cannot circumvent the exclusive remedy prescribed by Congress by asserting equivalent state law claims in addition to [a] FLSA claim." *Id.* Courts routinely dismiss duplicative state common law claims where they rely on proof of the same facts as an FLSA claim. *See, e.g.*, *Bule v. Garda CL Se., Inc.*, No. 14-21898-CIV, 2014 WL 3501546, at *2 (S.D. Fla. July 14, 2014) ("Expressing the claims against Defendant in terms of breach of implied agreement, quantum meruit, or unjust enrichment fails to render these state law claims materially distinct from the FLSA claim brought[.]"); *Melendez v. G4S Secure Sols. (USA) Inc.*, No. 20-24213-CIV, 2020 WL 10140956, at *3 (S.D. Fla. Dec. 11, 2020) ("Plaintiffs['] quantum meruit and FLSA claims arise from the same set of facts and are not materially distinct.. . . Plaintiffs' common law claim for quantum meruit based on violation of an implied contract concerning overtime wages is preempted by the FLSA and must be dismissed."); *Volcy v. Rose Mgmt. Props., Inc.*, No. 14-61418-CIV, 2014 WL 12861852, at *2–3 (S.D. Fla. Aug. 12, 2014) (same).

Here, Counts VI and VII are predicated on Defendant's alleged failure to "pay for all services"—that is, Defendant "not properly paying for all hours worked in violation of the laws of the United States and the State of Florida." ECF No. [1] ¶¶ 78, 85. Those claims "merely recast the FLSA claims in state law terms." *Garcia v. Nachon Enterprises, Inc.*, 223 F. Supp. 3d 1257, 1268 (S.D. Fla. 2016) (citing *Alexander v. Vesta Ins. Grp., Inc.*, 147 F. Supp. 2d 1223, 1240–41

(N.D. Ala. 2001)). They are "factually duplicative of the FLSA counts and based upon a violation of rights created by the FLSA." *Bell v. 1220 Mgmt. Grp., LLC*, No. 17-cv-22479, 2018 WL 3054795, at *1–2 (S.D. Fla. June 20, 2018). Thus, the Court finds Counts VI and VII are preempted by the FLSA and subject to dismissal.[4]

### F. Requests for Mental Anguish, Personal Suffering, Loss of Enjoyment of Life, and Front Pay

Defendant argues that Plaintiff's requests for mental anguish, personal suffering, loss of enjoyment of life, and front pay should be stricken, as such remedies "do not belong in a minimum-wage, overtime, FMWA, regulatory kickback, quantum meruit, or unjust enrichment case." ECF No. [23] at 17–18. Plaintiff does not specifically respond to this argument. ECF No. [30].

Under 29 U.S.C. § 216, which describes the penalties for violations of the FLSA, an employer who commits a minimum wage or overtime violation is liable to the employee affected in "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). By contrast, a violation of the FLSA's anti-retaliation provisions entitles an aggrieved employee to "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) or 218d of this title." *Id*.

While several circuit courts have concluded that compensation for emotional injuries is available for violations of the FLSA's *anti-retaliation* provisions, no circuit court has interpreted the availability of such damages in the *minimum wage* context. *See Moore v. Freeman*, 355 F.3d 558 (6th Cir. 2004); *Broadus v. O.K. Industries, Inc.*, 238 F.3d 990, 992 (8th Cir. 2001); *Lambert*

[4] Because the Court dismisses Counts VI and VII as duplicative of and preempted by the FLSA Counts, the Court does not reach Defendant's argument that those claims are precluded. The Court has not located the state court's ruling on Plaintiff's quantum meruit and unjust enrichment claims. *See Lunnon v. Colonial Van Lines*, CACE-24-018288 (Fla. 17th Cir. Ct.).

*v. Ackerley*, 180 F.3d 997, 1011 (9th Cir. 1999); *Travis v. Gary Community Health Center, Inc.*, 921 F.2d 108, 112 (7th Cir. 1990).

However, certain district courts within this circuit have opined on the issue, generally holding that claims for mental anguish, personal suffering, and loss of enjoyment of life are not recoverable under the FLSA. *See, e.g.*, *Alexander v. Vesta Insurance Group, Inc.*, 147 F. Supp. 2d 1223, 1240-41 (N.D. Ala. 2001); *Wigginton v. Coffee Health Grp.*, No. CV-08-S-227-NW, 2008 WL 11422091, at *5 (N.D. Ala. May 6, 2008); *Sigida v. Munroe Foods 2 LLC*, No. 1:14-CV-3968-RWS, 2016 WL 11469159, at *6 (N.D. Ga. Mar. 28, 2016); *Powell v. Carey Int'l, Inc.*, 514 F. Supp. 2d 1302, 1324 (S.D. Fla. 2007); *Seok Hwi Cha v. Kani House Japanese Rest.*, No. 1:16-CV-0485-SCJ, 2017 WL 11616366, at *2 (N.D. Ga. Oct. 16, 2017).

The Court agrees with the logic of those decisions. While the FLSA is a broad remedial statute, the damages available for minimum wage and overtime violations are limited by the statutory language—in a way that the damages available for retaliation violations are not. Had Congress intended to entitle parties aggrieved by a minimum wage or overtime violation to have access to other "legal or equitable relief," it would have written the statute that way. The long-held principle of *expressio unius est exclusio alterius* counsels in favor of only one conclusion—the inclusion of broader damages in one part of a provision but not the other implies that the latter part does not include such broader damages.

As for front pay, the Court's conclusion is the same—such relief is unavailable for violations of the FLSA's minimum wage provisions. Front pay is not included among the list of enumerated remedies and as such, it is not available as a matter of law. *See Avitia v. Met. Club of Chi.*, 49 F.3d 1219, 1231 (7th Cir. 1995) (holding that front pay is an equitable remedy under the FLSA). Thus, the Court strikes from Counts I and II—the FLSA counts—Plaintiff's requested

damages for mental anguish, personal suffering, loss of enjoyment of life, and front pay. *See Hodge v. Orlando Utils. Comm'n*, No. 6:09-cv-1059-Orl-19DAB, 2009 WL 4042930, at *4 (M.D. Fla. Nov. 23, 2009) (holding that an improper or unavailable remedy requested in a complaint may be stricken pursuant to Rule 12(f)).

**G. Class and Collective Allegations**

Finally, Defendant argues that Plaintiff's class and collective allegations should be stricken, as the proposed class is a fail-safe class—that is, membership turns on liability. ECF No. [23] at 18. It also fails because it sweeps in drivers that differ from one another in material respects. *Id*. at 19. Moreover, Plaintiff is not an adequate or typical representative, as he is subject to unique defenses arising from his prior state-court lawsuit and other circumstances unique to him. *Id*. Plaintiff does not respond specifically to this argument. ECF No. [23].

As a general matter, the Eleventh Circuit has explained that "the parties' pleadings alone are often not sufficient to establish whether class certification is proper." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008). That said, "[i]n some instances, the propriety *vel non* of class certification can be gleaned from the face of the pleadings." *Id*. Such situations, however, are "rare." *Weinraub as next friend of Korman v. Bank of Am., N.A.*, No. 1:24-CV-3780-TWT, 2026 WL 1974150, at *2 (N.D. Ga. July 8, 2026) (citations omitted); *see also Carrier v. Ravi Zacharias Int'l Ministries, Inc.*, 2023 WL 2355891, at *2 (N.D. Ga. Mar. 3, 2023) (noting that striking a complaint's class allegations is an "extreme remedy," reserved only for "exceptional cases" (citation omitted)). Whether it is appropriate for the Court to assess class claims prior discovery depends on whether the issues are "'plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim.'" *Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 695 (M.D. Ga. 2012) (quoting *Lumpkin v. E.I. Du Pont de Nemours & Co.*, 161 F.R.D. 480, 481 (M.D. Ga. 1995)).

As relevant to the Court's analysis, a fail-safe class is "'one whose definition incorporates the elements of a successful legal claim, such that determining whether an individual or entity is a member of the class 'front-ends a merits determination on [the defendant's] liability.'" *JWD Auto., Inc. v. DJM Advisory Grp. LLC*, 218 F. Supp. 3d 1335, 1342 (M.D. Fla. 2016) (quoting *Alhassid v. Bank of Am., N.A.*, 307 F.R.D. 684, 694 (S.D. Fla. 2015)); *see also Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010) ("The fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established.").

The Eleventh Circuit has yet to address whether fail-safe classes are necessarily impermissible, and there is a split among the circuit courts that have decided the issue. *See Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F.Supp.3d 610, 624 (E.D. Pa. 2015) (collecting cases). That said, the Eleventh Circuit has reflected an unfavorable view of fail-safe classes, warning against the "risk of promoting" them. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019) (citation omitted).

Many courts have concluded that arguments attacking a purported fail-safe class definition are more appropriately raised at the class certification stage. *See, e.g.*, *JWD Auto., Inc.*, 218 F. Supp. 3d at 1343; *Arkin v. Innocutis Holdings, LLC*, 188 F. Supp. 3d 1304, 1312 (M.D. Fla. 2016); *Tillman v. Ally Fin. Inc.*, No. 2:16-CV-313-FTM-99CM, 2016 WL 6996113, at *5 (M.D. Fla. Nov. 30, 2016); *Faulkner v. Acella Pharms., LLC*, No. 2:22-CV-92-RWS, 2023 WL 10475993, at *8 (N.D. Ga. July 10, 2023); *Smith v. Rainey*, No. 8:09-cv-1628-T-27MAP, 2011 WL 4352179, at *3 (M.D. Fla. Sept. 16, 2011) ("[C]ompliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim."). Such courts therefore deny requests to strike a plaintiff's proposed class at the motion to dismiss stage. *See, e.g.*, *JWD Auto., Inc.*, 218 F. Supp. 3d at 1343; *Arkin*,

188 F. Supp. 3d at 1312; *Tillman*, 2016 WL 6996113, at *5; *Eisenband v. Schumacher Auto., Inc.*, No. 18-CV-80911, 2018 WL 7820549, at *3 (S.D. Fla. Oct. 23, 2018); *MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, No. 19-21583-CIV, 2020 WL 5984382, at *15 (S.D. Fla. May 12, 2020), *report and recommendation adopted*, No. 19-21583-CIV, 2020 WL 5982020 (S.D. Fla. Oct. 8, 2020).[5]

The Court is not convinced that the proposed class definition is fatally defective such that striking it at this early stage of the proceedings is appropriate. Plaintiff describes a pattern of interaction between Defendant and drivers that Plaintiff argues constitutes an employer-employee relationship and contends that, by extension, Defendant is liable for failing to pay such employee-drivers the minimum wage. *See generally* ECF No. [1]. That class of drivers subject to the same Agreement and same actual business relationship appears ascertainable. Though Plaintiff's current proposed class definition describes an "unlawful compensation agreement," this phrase could easily be removed and the meaning of the class maintained without any risk of dipping into fail-safe territory. *See A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688, 696 (S.D. Fla. 2017) (explaining the court's ability to refine a class definition). At bottom, the Court does not find that the proposed class is irredeemably fail-safe. As such, Defendant's arguments are more appropriate for the class certification stage.

As to Defendant's argument that Plaintiff is not a typical or adequate representative, the Court is similarly unconvinced that striking class allegations is warranted. The issue of "whether

[5] Indeed, it is worth noting that, "[w]hen confronted with a fail-safe class, the court may revise the class on its own, or permit the plaintiff to cure the flawed definition." *Moody v. Circle K Stores, Inc.*, No. 2:18-CV-435-CLM, 2023 WL 404018, at *4 (N.D. Ala. Jan. 25, 2023) (citations omitted); *see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) ("the fail-safe problem is "more of an art than a science . . . and often should be resolved by redefining the class definition rather than flatly denying class certification on that basis."); *Cox v. Community Loans of America, Inc.*, 2014 WL 1216511, at *14 (M.D. Ga. Mar. 24, 2014) (explaining that the court may "redefine the class to bring it within the scope of Rule 23").

Plaintiff's claim deserves class treatment is a fact-dependent inquiry unsuitable for a motion to dismiss or strike." *Shamblin v. Obama for Am.*, No. 8:13-cv-2428-T-33TBM, 2014 WL 631931, at *2 (M.D. Fla. Feb. 18, 2014) (citations and quotations omitted); *see also Wagner v. CLC Resorts & Devs.*, Inc., 32 F. Supp. 3d 1193, 1198 (M.D. Fla. 2014) (finding defendant's arguments for a dismissal based on class action allegations "better suited as challenges to a motion for class certification, rather than a basis for a motion to dismiss"). Indeed, "[w]hether [a p]laintiff is an inadequate class representative or will have unique defenses central to the litigation is an inquiry for once the record is further developed." *Settle v. PHBC Mktg., LLC*, No. 8:24-CV-404-SPF, 2024 WL 3638007, at *4 (M.D. Fla. Aug. 1, 2024). As such, Defendant's request to strike the class and collective allegations is denied.

Moreover, Defendant does not specify what "unique defenses," ECF No. [23] at 19, would arise with respect to Plaintiff. The Court has already dismissed the quantum meruit and unjust enrichment claims, so it is unclear to the Court what remaining claims are subject to any sort of preclusion, and Defendant does not point to any. Similarly, Defendant's references to "alleged deductions unique to [Plaintiff]" or "the circumstances surrounding his termination and claimed final payments," *id.*, do not show Plaintiff to be a fatally defective class representative—Defendant fails to refer to specific allegations that would render Plaintiff inadequate. At most, Defendant highlights the need for additional factual development before Plaintiff's adequacy and typicality can be assessed. The Court declines to strike the class and collective allegations.[6]

[6] The Court has already found Plaintiff and other class members facially ineligible for overtime compensation based on the motor carrier exemption, so the Court does not address Defendant's related arguments.

**H. Plaintiff's Request to Amend**

Plaintiff opted not to use his Response in Opposition to specifically contradict any of Defendant's arguments. Instead, Plaintiff requested leave to amend, referring to "minor and correctable issues" within the Complaint. ECF No. [30] ¶ 1. Beyond this, Plaintiff offers little detail about what changes he would seek to make in an amended complaint. At most, Plaintiff asserts that he could cure the lack of pre-trial notice issue by demonstrating that there was a previous case in state court of which Defendant was aware. *Id.* ¶ 5.

District courts "have broad discretion in permitting or refusing to grant leave to amend." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). However, the law of this circuit is clear that "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1263 (11th Cir. 2004). "When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail." *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 822-23 (11th Cir. 1999). A futility analysis operates in substantially the same way as an analysis of a motion to dismiss. That is, if an amended complaint would still be "properly dismissed or be immediately subject to summary judgment for the defendant," a district court can determine that leave to amend the complaint is futile. *Rivas v. Bank of N.Y. Mellon*, 777 F. App'x 958, 965 (11th Cir. 2019) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)); *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996) (amendment is futile if the cause of action asserted therein could not withstand motion to dismiss); *Amick v. BM & KM, Inc.*, 275 F. Supp.2d 1378, 1381 (N.D. Ga. 2003) ("In the Eleventh Circuit, a proposed amendment is futile when the allegations of the proffered complaint would be unable to withstand a motion to dismiss.").

Here, the issues identified by the Court are not minor or technical; they go to the heart of the claims. For instance, the applicability of the motor-carrier exemption arises by virtue of the role Plaintiff describes the drivers as occupying—the actions of drivers necessarily affect the safety of operation of a motor vehicle, especially where the drivers are alleged to be responsible for maintenance and repair of the vehicles. Similarly, the lack of pre-suit notice is not an issue that can be cured, as Plaintiff does not allege that he gave any actual notice; he merely alleges that the prior lawsuit constitutes notice, which it does not. The quasi-contract counts based on the same conduct as the FLSA counts are necessarily duplicative of and preempted by the FLSA counts. And the requests for mental anguish, personal suffering, loss of enjoyment of life, and front pay are fundamentally unavailable under the FLSA's minimum wage provisions. Insofar as those issues could not be cured by amendment, the Court will not allow Plaintiff an opportunity to amend.[7]

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [23]**, is **GRANTED IN PART AND DENIED IN PART**.
2. Counts III, VI, and VII are **DISMISSED**.
3. Plaintiff's requests for mental anguish, personal suffering, loss of enjoyment of life, and front pay in Counts I and II are **STRICKEN**.

---

[7] Moreover, the Eleventh Circuit has held that a request for leave to amend contained in a response in opposition to a motion to dismiss is not properly before the court and "possesse[s] no legal effect." *See Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018). The court is "free to dismiss [plaintiff's] complaint with prejudice" on that basis alone without determining whether further amendment is futile, unless dismissal is based on shotgun pleading grounds. *See Pop v. LuliFama.com, LLC*, 145 F.4th 1285, 1297-98 (11th Cir. 2025); *Ounjian v Globoforce, Inc.*, 89 F.4th 852, 862 (11th Cir. 2023) ("A district court may dismiss a complaint with prejudice where the plaintiff fails to request leave to amend, or where the complaint could not be more carefully drafted to state a valid claim.").

4. Defendant shall file its Answer to the remaining Counts in the Complaint **by September 18, 2026**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 4, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record